[Cite as *C.L. v. S.M.*, 2018-Ohio-5281.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

C.L.                                            Court of Appeals No. L-17-1271

      Appellant                            Trial Court No. 12224982

v.

S.M.                                            **DECISION AND JUDGMENT**

      Appellee                             Decided:  December 28, 2018

* * * * *

Joanna M. Orth, for appellant.

Neil S. McElroy, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, C.L., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which denied his motion to modify the allocation of parental rights and responsibilities.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant is the father of two minor children: A.L., who was born in 2006, and D.L., who was born in 2008. Appellee, S.M., is the children's mother. Relevant here, on March 18, 2013, the parties consented to a judgment designating appellee the residential and custodial parent of the minor children, and awarding appellant visitation in accordance with the schedule provided in the Lucas County Local Parenting Plan.

{¶ 3} The present matter was initiated on February 26, 2016, when appellant filed his motion to modify the allocation of parental rights and responsibilities. The matter proceeded to a hearing before a magistrate on March 7 and April 21, 2017, on appellant's motion, as well as on a motion from appellee to modify child support.

{¶ 4} At the hearing, appellant first called Dawn Smith, the unit manager at Lucas County Centralized Drug Testing. Smith testified that appellee was tested for drugs on July 12, August 24, and August 30, 2016. The test results showed that appellee tested positive for Ecstasy on July 12, 2016, tested positive for opiates on August 24, 2016, and tested negative for all substances on August 30, 2016. Smith testified that none of the medications taken by appellee would lead to a false positive result for Ecstasy.

{¶ 5} In addition, Smith testified that appellee's boyfriend, S.H., was tested on August 1 and September 22, 2016, and both test results were negative for all substances. However, it was suggested that S.H. was ordered to take a drug test on July 12, 2016, but did not do so until August 1, 2016.

2.

{¶ 6} Finally, Smith testified that appellant was tested on May 23, July 12, and August 25, 2016. Appellant tested positive for amphetamines on May 23 and July 12, 2016, which Smith testified would be explained by the fact that appellant was taking Adderall. Appellant tested negative for all substances on August 25, 2016.

{¶ 7} Appellant next called Natalie Markis, a registered nurse at Diabetes Youth Services. Markis testified generally to the issues involving treatment and management of pediatric Type-1 diabetes, which D.L. has been diagnosed as having. Markis also testified regarding records that were shown to her of D.L.'s glucose meter from October 9, 2016. She testified that it appeared the amount of carbohydrates entered was incorrect, resulting in the insulin pump potentially administering 20 units of insulin, which could have caused D.L. to become unresponsive.

{¶ 8} The next witness to testify for appellant was K.H., appellant's sister. K.H. testified that during 2013 to 2014, she was the director of the daycare that the children attended, so she spoke with appellee regularly, and considered her to be a friend. K.H. testified that during that time period, appellee disclosed that her boyfriend, S.H., would yell at the children. K.H. relayed that appellee told her that she was afraid of S.H. and that he was using cocaine. K.H. then described an incident in March 2015 when she was at Kalahari with appellee, appellant, appellant's mother, and the children. D.L. was not acting normally, so appellant's mother suggested checking his blood sugar, and that was when it was discovered that D.L. was diabetic. D.L. was taken to the hospital, where he stayed for several days. While D.L. was in the hospital, appellee left to go home and take

3.

a shower. K.H. testified that when appellee returned about one hour later, appellee was exhibiting unusual behavior in that she was laughing and giggly. Finally, K.H. testified that on August 2, 2015, she was having lunch with D.L. when he stated that he did not want to go to his babysitter. As a result of her conversation with D.L., K.H. had some concerns about the babysitter. When she reported those concerns to appellee, appellee responded that D.L. had been playing with a lighter in the garage and was smoking cigarette butts. D.L. was approximately seven years old at the time.

{¶ 9} Following K.H.'s testimony, appellant took the stand as his last witness. Appellant testified that he rents a three-bedroom house from his mother, where he lives with his oldest son, C.L., whom he had through a prior relationship. When A.L. and D.L. are with appellant, they share the third room and sleep in bunk beds. Appellant works at Walgreen's Distribution Center from 7:00 a.m. to 3:00 p.m. Monday through Friday, and his gross income in 2016 was $22,256.

{¶ 10} Appellant then testified that he filed the motion to modify the allocation of parental rights and responsibilities because of the return of appellee's boyfriend, S.H., as well as D.L.'s diabetes diagnosis and the behavioral issues exhibited by the children.

{¶ 11} Regarding S.H., appellee was commonly in a relationship with him, but there were periods of time where the two of them would not be together. Appellant testified that appellee reported to him that S.H. was violent and had anger problems, and that he abused drugs such as cocaine, and sold other drugs such as marijuana and prescription pills. Appellant also noted that one summer, S.H. broke A.L.'s iPhone with

4.

a hammer. Appellant testified that when S.H. is not around, appellant has a pretty good relationship with appellee, and he gets to see the children every other day. Whenever S.H. comes back into the picture, however, appellant has little communication with appellee, and only gets to see the children according to the court schedule.

{¶ 12} As to D.L.'s diabetes diagnosis, appellant testified that he was concerned that D.L.'s blood sugar levels were not being properly monitored. As an example, appellant recounted the October 9, 2016 incident regarding the insulin pump being programmed improperly. Appellant also testified that D.L.'s blood sugar levels would be very high at school before lunch, but no one would check them afterwards to make sure that they returned to normal. In addition, appellant noted that a number of people that appellee has had watch the children have not been trained on how to monitor D.L.'s sugar levels.

{¶ 13} Regarding the children's behavioral issues, appellant testified that on several occasions A.L. would stay up all night, or would wake up in the middle of the night to play video games at appellee's house, and that this behavior was affecting his performance in school. Appellant testified that sometimes appellee would take the video games away, but then A.L. would get them back soon thereafter. In April 2015, A.L. began therapy at Harbor Behavioral Health after appellee called the police because A.L. broke his window and television set. Appellant attributed A.L.'s behavior in some part to the violent video games that A.L. was playing. Appellant testified that A.L. does not exhibit similar behavioral problems when A.L. is with him. In June 2015, appellee

5.

discontinued A.L.'s treatment at Harbor despite a recommendation of one year of counseling because, as she told appellant, "it just was a waste of time and wasn't working." Notably, D.L. also began therapy at Harbor at the same time for his hyperactive behavior, and similarly discontinued treatment in June 2015.

{¶ 14} Appellant also testified about obtaining tutoring for D.L. Appellant testified that his mother had been providing tutoring and that appellee acknowledged that it was beneficial for D.L. Appellant's mother then hired a high school student to tutor D.L. However, appellant testified that appellee became angry at his mother over an unrelated event, and discontinued tutoring.

{¶ 15} Appellant concluded that he believes it is in the children's best interest that he be named the residential parent, or failing that, that he and appellee share parenting time evenly.

{¶ 16} Following appellant's presentation of his case, appellee took the stand. Appellee testified that she lives in her own home with S.H. and the two children she has with him, C.H, who is seven years old, and X.H., who is nine months old, as well as A.L. and D.L. Appellee testified that she is a licensed social worker, and works as a case manager related to workers' compensation. She typically works from 9:00 a.m. to 3:30 p.m., Monday through Friday, and her gross earnings were $45,557 in 2015 and $32,721 in 2016.

{¶ 17} Appellee testified that she has a number of medical issues, including migraine headaches, back pain, high blood pressure, and situational anxiety. Appellee

6.

takes medication for all of those issues. Regarding her positive test for Ecstasy, appellee denied ever taking the drug, and testified that it was a false positive. Appellee also testified regarding a photo of a marijuana bowl on her dresser taken by appellant. Appellee denied that the marijuana bowl was hers, and testified that she does not smoke marijuana. Appellee admitted that she did recently obtain a medical marijuana card, but that she has not used it yet and only intends to take the medical marijuana through edibles after the children have gone to sleep.

{¶ 18} As to the children's behavior, appellee testified that A.L. does not have any behavioral problems, and that she discontinued the therapy sessions at Harbor when she believed that the issue had been resolved. Appellee also testified that D.L. has been diagnosed with ADHD and dyslexia, and has been prescribed medication. Appellee further stated that an individualized education plan has been established for D.L., and he has been making progress through that plan at school. Concerning tutoring, appellee testified that she discontinued the tutoring because it was too far away, and she did not feel that it was benefitting D.L. Appellee instead recently placed D.L. on a waiting list for a reading interventionist, which she is paying for out of pocket at $50 per hour.

{¶ 19} Turning to her relationship with S.H., appellee testified that she has been with him since 2008, albeit with several bumpy patches. She testified that S.H. is her best friend and main supporter, and insisted that there is no violence in her household.

{¶ 20} Following appellee's testimony, the matter was continued to April 21, 2017, for testimony from the guardian ad litem. The guardian ad litem testified that A.L.

7.

was doing well at school, and that she had no concerns. She also testified that D.L. was making progress in school through the implementation of his individualized education plan. She did, however, expect that appellee would obtain appropriate tutoring for D.L. if it was determined that it was needed. Finally, she believed that D.L.'s diabetes was being properly managed.

{¶ 21} Regarding appellee's drug use, the guardian ad litem expressed concern with appellee's potential use of medical marijuana, and would recommend against it. The guardian ad litem was also concerned with appellee's positive test result for Ecstasy, and could not rule out that appellee had in fact taken the drug.

{¶ 22} The guardian ad litem further testified that she had concerns as to the parties' ability to communicate effectively with each other, and she acknowledged that S.H.'s presence made the situation more difficult.

{¶ 23} Ultimately, the guardian ad litem recommended that the parties' current custodial arrangement remain the same, with appellant enjoying expanded visitation time.

{¶ 24} Following the hearing, the magistrate met with the children for an in camera interview. Thereafter, on May 5, 2017, the magistrate issued her decision denying appellant's motion to modify the allocation of parental rights and responsibilities. The magistrate did find that appellant had established a change of circumstances, but after examining the factors under R.C. 3109.04(F), determined that a change in custody was not in the best interests of the children. In particular, the magistrate reasoned that the children were very well-adjusted to their school

8.

environment, and appellant's plan to change their schools would "cause at least some initial disruption to the known careful and supportive attention each is receiving now." In addition, the magistrate noted the seriousness of appellee's drug use—prescribed or otherwise—and recognized that it did give her concern. However, the magistrate determined that her concern was for unknown, potential consequences, and that the evidence to date demonstrates that appellee's prescribed medications have not impacted her ability to parent the children appropriately.

{¶ 25} Along with the order on appellant's motion to modify the allocation of parental rights and responsibilities, the magistrate also issued an order modifying appellant's child support obligations. In the child support order, the magistrate ordered that appellee is entitled to claim the children's dependent exemptions for tax purposes.

{¶ 26} The trial court adopted the magistrate's decision on May 8, 2017.

{¶ 27} On May 18, 2017, appellant objected to the magistrate's decisions, requested that the proceedings be transcribed, and moved for an extension of time to supplement his objections once the transcript has been filed. On May 25, 2017, the trial court ordered the court reporter to "prepare the transcript of the March 7, 2017 and April 21, 2017 proceedings."

{¶ 28} On August 16, 2017, appellant filed his supplemental objections to the magistrate's decision. Included therein was an objection to the magistrate's determination that appellee was entitled to the income tax exemptions.

9.

{¶ 29} On October 2, 2017, the trial court entered its judgment overruling appellant's objections to the magistrate's decision, and denying his motion to modify the allocation of parental rights and responsibilities. The trial court stated that, after conducting a de novo review of the objections, the record, the transcript of the hearings, and the record of the in camera interview, it found that the evidence supported the magistrate's decision.

## II. Assignments of Error

{¶ 30} Appellant has timely appealed the trial court's October 2, 2017 judgment entry, and now asserts four assignments of error for our review:

> I. The trial court's designation of mother as residential parent and legal custodian of AL and DL is against the manifest weight of the evidence.
>
> II. The trial court erred, as a matter of law, by failing to conduct an independent review of all of the evidence presented to the magistrate.
>
> III. The trial court erred to the prejudice of father and DL in failing to determine that court-appointed counsel for DL was ineffective.
>
> IV. The trial court erred, as a matter of law, in allocating the tax exemptions to appellee pursuant to R.C. 3119.82.

## III. Analysis

{¶ 31} In his first assignment of error, appellant contests the trial court's determination that it was in the children's best interest for appellee to remain the

residential parent and legal custodian. We review a trial court's decision regarding a motion for modification of the allocation of parental rights and responsibilities under an abuse of discretion standard. *Green v. Richards*, 6th Dist. Wood No. WD-12-039, 2013-Ohio-406, ¶ 17, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraphs one and two of the syllabus. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} R.C. 3109.04(E)(1)(a) provides,

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

11.

(ii) The child, with the consent of the residential parent or both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

The Ohio Supreme Court has summarized that R.C. 3109.04(E)(1)(a) "allows a court to modify a prior decree allocating parental rights and responsibilities only if (1) 'a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree' and (2) the modification is in the best interest of the child." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 21. Here, the trial court found that a change of circumstances occurred, so we will focus our analysis only on the best interest prong.

{¶ 33} When determining the best interests of the child, the trial court is guided by R.C. 3109.04(F)(1), which states,

(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

12.

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been

determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶ 34}** In his brief, appellant focuses on two issues: (1) the management of D.L.'s diabetes, and (2) appellee's drug use, prescription or otherwise, and her relationship with S.H. and his issues with violence and drug use.

**{¶ 35}** Relative to the first issue, appellant argues that the trial court's finding that D.L.'s diabetes "is being properly managed" is not supported by the evidence where it is clear that appellee allows D.L. to administer his own insulin without adult supervision, resulting in the October 9, 2016 potential insulin overdose. We disagree. In this case, the guardian ad litem testified that she has spoken with D.L.'s doctor, and has concluded based on her conversations with him that D.L.'s diabetes was being properly managed. Further, the guardian testified that while there is some concern that the October 9, 2016 incident occurred, there were no concerns that the one-time isolated incident caused any harm. Thus, we find that, contrary to appellant's position, the trial court's finding that D.L.'s diabetes is being properly managed is supported by the evidence.

**{¶ 36}** As to the second issue, appellant asserts that the evidence presented during the hearings reveals that the children could be subjected to drug use and violent outbursts while in appellee's care. Thus, he contends that the trial court abused its discretion in finding that it was in the best interests of the children to remain with appellee. However, the record reflects that the trial court considered the drug issues, but determined, in conjunction with all of the other factors under R.C. 3109.04(F)(1), that the potential, yet unrealized, consequences from appellee's drug use were not enough to overcome the reality that the children were doing well with appellee, were well-adjusted, and were

15.

making substantial progress in school. While we find that appellant's concerns based upon the evidence presented during the hearing are legitimate, we cannot say that the trial court's careful consideration and balancing of the R.C. 3109.04(F)(1) factors constituted an abuse of discretion.

{¶ 37} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 38} In his second assignment of error, appellant argues that the trial court erred in failing to review the whole record before the magistrate, in particular the in camera interview, because the in camera interview was not transcribed until October 31, 2017, as part of preparing the record for appeal. Notably, though, the in camera interview was transcribed from an electronic recording of the interview. Further, the trial court stated in its decision that it reviewed "the record of the Magistrate's *in camera* interview of the minor children." Without evidence to the contrary, we must presume the regularity of the proceedings, and thus presume that the trial court in fact listened to the electronic recording of the in camera interview. *See State v. Phillips*, 74 Ohio St.3d 72, 92, 656 N.E.2d 643 (1995) ("[A] trial court's proceedings are presumed regular unless the record demonstrates otherwise.").

{¶ 39} Accordingly, appellant's second assignment of error is not well-taken.

{¶ 40} In his third assignment of error, appellant argues that he was prejudiced because D.L. received ineffective assistance of counsel. Appellant asserts that counsel was provided for D.L. because his desire to reside primarily with appellant conflicted with the recommendation of the guardian ad litem. Appellant contends that counsel

16.

failed to advocate for D.L. in any way, in that counsel did not call any witnesses on his behalf, nor did she meaningfully cross-examine any of the witnesses at the hearing.

{¶ 41} The standard for a claim of ineffective assistance of counsel in a juvenile proceeding is the same as that used in criminal cases. *Jones v. Lucas Cty. Children Servs. Bd.*, 46 Ohio App.3d 85, 86, 546 N.E.2d 471 (6th Dist.1988). To establish ineffective assistance, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

{¶ 42} We note at the outset that appellant has provided no support for the proposition that he can raise a claim of ineffective assistance of counsel on behalf of his child. Nevertheless, we do not need to reach that issue because even assuming that appellant can properly raise the claim, appellant has failed to demonstrate any prejudice from counsel's allegedly deficient performance. Appellant does not identify, based on the record, any questions that counsel should have asked or witnesses that counsel should have called. Indeed, appellant has made no demonstration of how the results of the proceeding would have been different had counsel been more active during the hearing.

17.

Therefore, because appellant has not satisfied the second prong of the *Strickland* test, we hold that appellant's claim on behalf of D.L. of ineffective assistance of counsel must fail.

{¶ 43} Accordingly, appellant's third assignment of error is not well-taken.

{¶ 44} Finally, in his fourth assignment of error, appellant argues that the trial court erred when it allocated the tax exemptions for the children to appellee. We review a trial court's allocation of tax exemptions between parents under an abuse of discretion standard. *Eickelberger v. Eickelberger*, 93 Ohio App.3d 221, 225-26, 638 N.E.2d 130 (12th Dist.1994).

{¶ 45} R.C. 3119.82 provides, in pertinent part,

Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * *. If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children * * *. In cases in which the parties do not agree which parent may claim the children as dependents,

18.

the court shall consider, in making its determination, any net tax savings,

the relative financial circumstances and needs of the parents and children,

the amount of time the children spend with each parent, the eligibility of

either or both parents for the federal earned income tax credit or other state

or federal tax credit, and any other relevant factor concerning the best

interest of the children.

Ultimately, "the general rule is that the tax exemption may be awarded to a non-custodial

parent only when doing so serves the best interests of the child." *In re Taylor G.*, 6th

Dist. Lucas No. L-05-1197, 2006-Ohio-1992, ¶ 23, citing *Bobo v. Jewell*, 38 Ohio St.3d

330, 332, 528 N.E.2d 180 (1988).

{¶ 46} In support of his assignment of error, appellant notes the income disparity

between himself and appellee. Further, he comments that appellee has another adult

living with her, S.H., to help pay for household expenses. Finally, he points out that

appellee has two other children whom she can claim for tax purposes. Appellant asserts

that if he were awarded the tax exemptions it would afford him the ability to purchase

more things for the children and to engage in more activities with them. Thus, he

concludes that it is in the children's best interest to award him the tax exemptions, and

the trial court abused its discretion in awarding the exemptions to appellee.

{¶ 47} Upon our review of the record, we hold that the trial court's decision is not

an abuse of discretion. Despite appellant's assertions on appeal, there was no evidence

presented at the hearing that being awarded the tax exemptions would allow him to

19.

engage in more activities or buy more things for the children. Instead, when asked about the tax exemptions, appellant simply replied that they should be awarded to him because appellee has two other children and has S.H. living with her. Notably, we do not doubt appellant's position that being awarded the tax exemptions would be financially helpful to him, and could provide opportunities to do more things with his children. However, because the issue was only very briefly addressed during the hearing and there was no real evidence presented on the matter, we cannot say that the trial court abused its discretion in maintaining the status quo and awarding the tax exemptions to appellee as the custodial parent.

{¶ 48} Accordingly, appellant's fourth assignment of error is not well-taken.

## IV. Conclusion

{¶ 49} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                      _____

                                                    JUDGE

Arlene Singer, J.               

                                    _____

Thomas J. Osowik, J.                             JUDGE
CONCUR.

                                    _____

                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.